UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES WATSON,                                          **REPORT and**
                                                         **RECOMMENDATION**

                                Plaintiff,

                                                         08-CV-00960(A)(M)

v.

M.D. LESTER N. WRIGHT, et al.,

                                Defendants.
_____

               This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial

proceedings, including preparation of a Report and Recommendation on dispositive motions

[36].[1]  Before me is defendants' motion for summary judgment [239].  Oral argument was held

on September 19, 2012 [254].  Thereafter, plaintiff made post-argument submissions [255, 256].

For the following reasons, I recommend that defendants' motion be  granted in part and denied in

part.


                                        **BACKGROUND**

               Plaintiff, an inmate, commenced this action *pro se* pursuant to 42 U.S.C. §1983,

alleging that defendants have been deliberately indifferent to his medical needs while he was

incarcerated by the New York State Department of Corrections and Community Supervision

("DOCCS").  Fourth Amended Complaint dated June 7, 2011 [212].  Plaintiff suffers from

_____

               [1]          Bracketed references are to the CM/ECF docket entries.

Hepatitis C (defendants' Statement of Undisputed Facts [239-2], ¶11) and alleges that his

symptoms include nausea and pruritus[2] (id., ¶¶12-13).

## Lakeview Correctional Facility

Plaintiff was transferred to the Lakeview Correctional Facility on July 26, 2007

(id., ¶27). At that time, defendant Lawrence Wilcox, N.P. reviewed his medical records (id.,

¶30), which indicated that he had been previously prescribed Vistaril for a bout of hives (also

known as urticaria) which he experienced as a reaction to medications he was receiving as part of

his Hepatitis C treatment (id., ¶32). Although he was no longer receiving the Hepatitis C

medication and had not had any further incidents of hives, he had continued to receive Vistaril.

(id., ¶¶32-34; Wilcox Declaration [239-10], ¶7). Therefore, Nurse Wilcox determined that the

Vistaril should be discontinued. Defendants' Statement of Undisputed Facts [239-2], ¶35.[3] On

July 29, 2007, plaintiff was also examined by defendant Kathleen Johnson, R.N., who found no

rashes, hives or skin irritations (id., ¶41).

During his July 29, 2007 examination plaintiff complained of nausea, itching and

an inability to eat (id., ¶40). He was offered hydrocortisone cream, but refused (id., ¶43). The

following day, plaintiff was seen by Nurse Johnson in sick call for the same complaints (id.,

¶46). During this examination, plaintiff conceded that he rubbed his skin to cause it to become

red. (id., ¶48; Zimmerman Declaration [239-3], Ex. B, p. 52). Other than this self-inflicted

irritation, no rash was observed (id., ¶¶49-50). Plaintiff was also examined by Nurse Wilcox on

---

[2]        Pruritus is defined as itching. Stedman's Medical Dictionary (27th Edition 2000).

[3]        By memorandum dated August 2, 2007, from Nurse Wilcox to plaintiff, he explained his
decision to discontinue plaintiff's Vistaril. Moffit Declaration [239-7], Ex. A, Bates No. 00989.

July 30, 2007, but he did not observe any hives (id., ¶¶54, 58).  At that time, plaintiff indicated that he needed to continue taking Vistaril to control his anxiety and to assist him to sleep (id., ¶ 61).  In response, Nurse Wilcox submitted a mental heath referral for plaintiff's anxiety.  Wilcox Declaration [239-10], ¶13; Zimmerman Declaration [239-3], Ex. A, Bates No. 03020.

Although plaintiff asked to continue the low-fat, high fiber diet he had been receiving at his prior facility, plaintiff's liver functions were normal (defendants' Statement of Undisputed Facts [239-2], ¶11, ¶¶63-64).  Therefore, Nurse Wilcox determined that plaintiff's special diet could be discontinued (id., ¶66).  Plaintiff was caught hoarding food on July 30 and 31, 2007, which indicated to Nurse Wilcox that plaintiff had an adequate appetite (id., ¶¶68-70; Zimmerman Declaration [239-3], Ex. A, Bates No. 03020).

On August 1, 2007, plaintiff was provided with Lidex, a skin ointment, by Nurse Johnson for complaints of dry skin (id., ¶72).  Despite complaints of a rash and itching, Nurse Johnson saw no signs of redness or irritation when she examined him on August 8, 2007 (id., ¶¶73-74).  However, she did observe signs of Versicolor, and stated that she would have Nurse Wilcox evaluate that condition (id., ¶76).  That same day, plaintiff was seen by Nurse Wilcox, but he did not observe any rash (id., ¶¶78, 80).  On August 15, 2007, plaintiff requested and was given a 30-day supply of Lidex (id., ¶81).

On August 22, 2007, plaintiff requested a referral to a gastroenterologist, but Nurse Wilcox determined that no referral was needed based on his current medical condition (id., ¶85).  Nurse Wilcox believed that this request should be addressed by plaintiff's permanent facility, to which he was scheduled to be transferred shortly (id., ¶84).  Plaintiff was transferred from Lakeview to Attica Correctional Facility on September 4, 2007 (id., ¶151).

Plaintiff made various complaints about his medical treatment while incarcerated at Lakeview. On August 7, 2007, plaintiff submitted a complaint to defendant James Steeg, the Nurse Administrator, complaining about his medical treatment at Lakeview, including the failure to be seen by a medical doctor and the discontinuance of his special diet and Vistaril. Plaintiff's Ex. H [246-5]. In response, on August 9, 2007 Nurse Administrator Steeg advised plaintiff to contact defendant Ian Caisley, M.D., Lakeview's Facility Health Services Director ("FHSD") (id.). Responding to an August 16, 2007 memorandum from plaintiff to Ronald Moscicki, the Superintendent at Lakeview, by memorandum dated August 16, 2007, defendant Richard C. Moffit, the acting Deputy Superintendent for Administration ("DSA"), advised plaintiff that he had investigated the matter and found that Nurse Wilcox's August 2, 2007 memorandum to plaintiff "thoroughly and clearly" addressed his medical concerns, and reminded him that he could continue to follow the callout procedure to address his medical concerns. Moffit Declaration [239-7], Ex. A, Bates No. 01001. When plaintiff on August 19, 2007 requested to be seen by a physician and complained that his problems were being ignored, by memorandum dated August 21, 2007, DSA Moffit advised plaintiff:

> "Since arriving at Lakeview . . . , you have been seen by the Health Services Unit, including the Nurse Practitioner, on at least eight separate occasions. I understand that Diagnostic Tests, Physical Therapy Consultations, and Treatments have been recommended by the Health Care Staff for you during your brief time here at Lakeview" (id., Bates No. 00998).

He also advised plaintiff that his letter would be forwarded to Dr. Caisley for his review and recommendation (id.). In an August 24, 2007 Memorandum from Dr. Caisley to DSA Moffit, he indicated that he had completed a chart review and concluded that plaintiff's "problems [were] being adequately addressed" (id., Bates No. 01005).

Plaintiff also filed a number of grievances arising from his medical care. Moscicki Declaration [239-8], 8, Ex. B. These grievances were denied by the Inmate Grievance Review Committee ("IGRC"), and were unsuccessfully appealed to Superintendent Moscicki and to the Central Office Review Committee ("CORC"), which was coordinated by defendant Karen Bellamy, DOCCS Inmate Grievance Program Director (id.; Bellamy Declaration [239-4], ¶¶1, 4). Plaintiff's First Cause of Action alleges that Nurses Wilcox and Johnson and Dr. Caisley "summarily discontinu[ed] [his] prescriptions for non-medical reasons, refus[ed] to examine the [him], den[ied] [him] access to a medical doctor for non-medical reasons" causing him "lose weight", "aggravate [his] chronic fatigue" and to "be in substantial pain and discomfort", in deliberate indifference to his "serious medical needs" and in violation of the Eighth Amendment. Fourth Amended Complaint [212], ¶42. His Second Cause of Action alleges that defendants Lester Wright, the Chief Medical Officer for DOCCS,[4] Superintendent Moscicki, DSA Moffit and Nurse Administrator Steeg were personally involved in the deliberate indifference alleged in the First Cause of Action by "failing to follow [DOCCS'] policy and have [him] seen by a medical doctor after numerous unresolved complaints; deferring to and allowing the determination of a Nurse Practitioner to overrule the prescriptions and orders of doctors and specialists; and failing to properly investigate [his] concerns causing [him] to suffer substantial pain and discomfort . . . to lose substantial weight . . . an adverse effect of the Plaintiff's life activities of eating and sleeping" in deliberate indifference to his serious medical needs, in

---

[4] Carl Koenigsmann, M.D., is Dr. Wright's successor as DOCCS' Chief Medical Officer. The parties previously agreed that pursuant to Fed. R. Civ. P. ("Rule") 25(d)(1) Dr. Koenigsmann should be substituted for Dr. Wright with respect to plaintiff's official capacity claim. Zimmermann Declaration [205], ¶11; Defendants' Memorandum of Law [239-1], p. 4 n. 2.

violation of the Eighth Amendment.  Id., ¶43.  His Third Cause of Action alleges that "[t]he policy of [DOCCS] to discontinue medications upon a prisoner's transfer from facility to facility, [thereby] causing a lapse in the administration of a prisoner's medication", constitutes deliberate indifference, in violation of the Eighth Amendment.  Id., ¶44.

## Clinton Correctional Facility

Plaintiff was eventually transferred to Clinton Correctional Facility on October 15, 2009.  Defendants' Statement of Undisputed Facts [239-2], ¶152.  On October 23, 2009, he was seen by Kang Lee, M.D., a physician at Clinton (id., ¶155).[5]  Accordingly to Dr. Lee, his chart revealed that plaintiff had stage IV cirrhosis, related to his Hepatis C (id., ¶157), but did not have any symptoms of Hepatis C infection (id., ¶162).  Plaintiff was also  given a blood test on September 3, 2009 that revealed normal liver functioning (id., ¶160).  Dr. Lee planned to monitor his blood levels every three months and to refer him back to a gastroenterologist, if necessary (id., ¶164).[6]

On October 15, 2010, plaintiff's prescription for Ensure (a dietary supplement for individuals who are not obtaining adequate nutrition with a normal diet) was discontinued because his body mass index demonstrated that he was receiving adequate nutrition.  Johnson Declaration [192-1], Ex. A, Bates No. 002582; Defendants' Statement of Undisputed Facts [239-

---

[5]     The Lee Declaration referenced in Defendants' Statement of Undisputed Facts ([239-2], ¶¶152-157; 160-164) did not accompany defendants' motion for summary judgment. It was filed [86] in response to plaintiff's second motion for a preliminary injunction and expedited hearing [77].

[6]     While plaintiff has not named Dr. Lee as a defendant,  Vonda Johnson, M.D., the FHSD at Clinton, is a defendant.

2], ¶¶170-172.[7]  He gained weight in the six-month period following the cessation of Ensure, and his blood tests showed no nutritional deficit.  Defendants' Statement of Undisputed Facts [239-2], ¶¶173-174.  While incarcerated at Clinton, plaintiff was on a therapeutic, high fiber, low fat diet (id., ¶176).  He was also prescribed Prilosec for nausea and Vistaril for his complaints of itching on January 26 and February 23, 2011 (id.,  ¶184; Johnson Declaration [192-1], ¶¶22-23).  He has also been prescribed lotion for his skin when it was medically indicated; however, even if it is not medically indicated, inmates can purchase skin lotions at the commissary  (id.,  ¶¶187-188).

Plaintiff's requests for access to more frequent showers to moisturize his skin were denied because it was not medically indicated (id., ¶¶194-196; Johnson Declaration [192-1], ¶13).  Plaintiff's requests to see a dermatologist have also been denied as not being medically indicated (id., ¶¶198-199).

Plaintiff's Fourth Cause of Action alleges that "[t]he refusal of defendants Koenigsmann, Johnson and Bellamy to have [him] seen by a hepatologist and authoritatively diagnose the condition of Plaintiff's liver disease and offer treatment options; the refusal of defendants to provide for treatments to ameliorate the symptoms of [his] extrahepatic manifestations such as showers and lotion for the pruritus, the Ensure for [his] gastric and nutritional maladies" constitutes deliberate indifference, in violation of the Eighth Amendment. Fourth Amended Complaint [21], ¶45.

---

[7]       The Johnson Declaration referenced in Defendants' Statement of Undisputed Facts ([239-2], ¶¶169-174, 176, 179-185, 187-190, 194, 196-200, 204-211) did not accompany defendants' motion for summary judgment. It was filed [192-1] in response to plaintiff's fourth  motion for a preliminary injunction and expedited hearing [183].

# ANALYSIS

## A.     Summary Judgment Standard

"A party moving for summary judgment bears the burden of establishing that there exists no genuine issue of material fact warranting a trial . . . . In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Gummo v. Village of Depew, N.Y., 75 F.3d 98, 107 (2d Cir.), cert. denied, 517 U.S. 1190 (1996); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"Once that burden has been established, the burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial . . . . To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor." Guerrero v. Lowe's Home Centers, Inc., 462 F. Supp.2d 399, 406 (W.D.N.Y. 2006) (Siragusa, J.), aff'd, 254 Fed. Appx. 865 (2d Cir. 2007) (Summary Order). *See also* Celotex, 477 U.S. at 322 (Fed. R. Civ. P. ("Rule") "56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## B.     Deliberate Indifference Standard

In order to establish a violation of the Eighth Amendment arising out of inadequate medical treatment, plaintiff must prove that defendants acted with "deliberate indifference to [his] serious medical needs". Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The

"deliberate indifference" standard has both objective and subjective components.  <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir.1994), <u>cert</u>. <u>denied</u>, 513 U.S. 1154 (1995).  To satisfy the objective component, the alleged medical need must be "sufficiently serious." <u>Id</u>.  A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." <u>Id</u>. "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998).

        To satisfy the subjective component, plaintiff must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment.  <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996).  "The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" <u>Id</u>.  *See also* <u>Hernandez v. Keane</u>, 341 F.3d 137, 144 (2d Cir. 2003), <u>cert</u>. <u>denied</u>, 543 U.S. 1093 (2005) (likening the necessary state of mind to "the equivalent of criminal recklessness").  In order to be found "sufficiently culpable," the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).

**C.**    **Medical Treatment at Lakeview**

Plaintiff's First and Second Causes of Action relate to the medical treatment he received while at Lakeview. Fourth Amended Complaint [212], ¶¶42, 43. Nurses Wilcox and Johnson and Dr. Caisley argue that these claims should be dismissed as against them because they were not deliberately indifferent to plaintiff's medical needs (defendants' Memorandum of Law [239-1], Point I). DSA Moffit, Superintendent Moscicki, Nurse Administrator Steeg, and Director Bellamy argue that even if there was deliberate indifference, they had no personal involvement in this deprivation (id., Points II and III).

### 1. Nurses Wilcox and Johnson and Dr. Caisley

#### a. Plaintiff's Pruritus

Defendants admit that plaintiff suffers from Hepatitis C, which they concede is a "serious illness" (defendants' Memorandum of Law [239-1], p. 18). However, they dispute whether plaintiff's Hepatitis C has resulted in a symptom that may produce death, degeneration, or extreme pain. I conclude that plaintiff's complaints of pruritus (itching) arising from his Hepatis infection do not constitute an objectively serious condition. *See* Benitez v. Ham, 2009 WL 3486379, *11 (N.D.N.Y. 2009) ("[T]he evidence shows that Plaintiff suffered from a severe body itch. While this condition was undoubtedly unpleasant, it simply does not rise to the level of an Eighth Amendment violation"); Judge Arcara's September 29, 2011 Decision and Order [222-1], p. 7 (denying plaintiff's fourth motion for a preliminary injunction - "Plaintiff has failed to establish that his pruritus . . . [is a] serious medical condition[ ]", *citing* Benitez).

Moreover, plaintiff has not raised a triable issue of fact as to whether defendants were deliberately indifferent to this condition. While plaintiff may disagree with the treatment

provided for his pruritus, he was regularly provided with Lidex, an ointment for dry skin.[8]

Johnson Declaration [239-6], ¶¶9, 11. "Deliberate indifference [will not] be found when an

inmate simply prefers an alternative treatment or feels that he did not get the level of medical

attention that he desired." Shire v. Greiner, 2007 WL 840472, * 12 (S.D.N.Y. 2007). *See* Tafari

v. Stein, 2009 WL 331378, *7 (W.D.N.Y. 2009) (Scott, M.J.), reconsideration denied, 2009 WL

1322317, 2009 WL 1579530 ("it is well-established that a prisoner is not entitled to receive the

medical treatment of his choice. So long as the treatment given is adequate, the fact that a

prisoner might prefer a different treatment or a different doctor does not give rise to an Eighth

Amendment violation").


      **b.**      **Plaintiff's Weight Loss**

Plaintiff also alleges nausea and other gastrointestinal issues associated with his

Hepatitis infection. According to plaintiff, defendants "chose to ignore the Plaintiff's complaints

of gagging, nausea, the urge to vomit and inability to eat as signs of serious gastric issues".

Plaintiff's Opposition to Statement of Uncontested Material Facts [246], ¶8. Associated with

defendants' failure to provide such treatment, plaintiff alleges that he experienced significant

weight loss while at Lakeview. Id., ¶11.

Although defendants repeatedly deny that plaintiff suffered *any* weight loss at

Lakeview (defendants' Statement of Undisputed Facts [239-2], ¶145; defendants' Memorandum

of Law [239-1], pp. 8, 9, 11; Caisley Declaration [239-5], ¶14; Wilcox Declaration [239-10],

---

[8]      Plaintiff states that his pruritus interfered with his sleeping. Plaintiff's Opposition to
Statement of Uncontested Material Facts [246], ¶7.

¶32 ), these denials are belied by plaintiff's medical records, which demonstrate that he experienced a significant and rapid weight loss while at Lakeview, with his weight decreasing from 234 lbs. on June 11, 2007, to 219 lbs. on August 28, 2007, and to 203 lbs. on September 7, 2007. Plaintiff's Opposition to Defendants' Statement of Uncontested Material Facts [246], Ex. G. Corresponding to his precipitous weight loss, plaintiff made repeated complaints that he was nauseous, that he was gagging on his food, and that he was unable to eat. *See* Wilcox Declaration [239-10], ¶¶20, 21; Johnson Declaration [239-6], ¶¶7, 8, 10.[9]

While "[c]omplaints of abdominal pain [and] vomiting . . . d[o] not constitute a serious medical need", Ross v. McGinnis, 2004 WL 1125177, *10 (W.D.N.Y. 2004) (Schroeder, M.J.), "rapid weight loss . . . may present a serious medical condition". Anderson v. Kooi, 2011 WL 1315721, *12 (N.D.N.Y. 2011), adopted, 2011 WL 1256942 (N.D.N.Y. 2011).[10] Whether plaintiff's apparent rapid weight loss was attributable to defendants' failure to have him seen by a gastric specialist, failure to continue his therapeutic diet, failure to prescribe Vistaril,[11] or some combination of these factors, since I must give plaintiff every favorable inference (for purposes

---

[9] In opposition to defendants' motion for summary judgment, plaintiff also alleges in his Memorandum of Law [246] that he "suffered constant and chronic gastric pain during his 40 day stay at [Lakeview]" (id., p. 7). However, this contention is not supported by the medical records which he references. Id.

[10] *Compare with* Hutchinson v. New York State Correctional Officers, 2003 WL 22056997, *5 (S.D.N.Y. 2003) ("the court has not been convinced that digestion problems, weight loss, and dizziness are conditions 'of urgency, . . . [which] may produce death, degeneration, or extreme pain'").

[11] Plaintiff argues that "[e]ven though Vistaril is not intended for the gastric symptoms, [his] symptoms were ameliorated due to the anti-emetic and anti secretory effect on bile acids of the Vistaril." Plaintiff's Memorandum of Law [246], p. 7. He also alleges that when he was transferred to Attica, "[i]t would come to light after testing by a gastric specialist that [he] suffered from gastritis, esophagitis and H.Pylori. That was the cause of [his] nausea when eating". Plaintiff's Affidavit [246], ¶17; *see* Plaintiff's Memorandum of Law [246], p. 7.

of this motion), I conclude that a triable issue of fact exists as to whether plaintiff's weight loss - especially when coupled with plaintiff's Hepatitis C - constitutes a sufficiently serious condition under the objective prong. *See* <u>Bourgoin v. Weir</u>, 2011 WL 4435695, *7 (D.Conn. 2011) ("The significant weight loss - more than forty pounds [in approximately 11 months] - may be objective evidence of a deterioration in the state of Mr. Bourgoin's health . . . . The record is such that reasonable jurors could find that Mr. Bourgoin suffered from an objectively serious medical condition").[12]

Turning to the subjective prong, defendants argue that they did not ignore plaintiff's complaints of nausea and an inability to eat, but rather they believed that his complaints were unfounded based on the fact that he had taken his food tray (Johnson Declaration [239-6], ¶10) and that he was hoarding food in his cell (Wilcox Declaration [239-10], ¶¶13, 18).[13] They also argue that they used their professional judgment to determine that plaintiff did not require Vistaril, a therapeutic diet, or a referral to an outside specialist, and that plaintiff's claims amount to a disagreement as to the proper course of treatment. Defendants' Memorandum of Law [239-1], p. 10.

Again, giving plaintiff every favorable inference for purposes of this motion, defendants' conduct could be viewed as more than mere negligence or a disagreement as to treatment. Any reasonable belief by defendants that plaintiff's complaints were unfounded is

_____

[12] There may be possible explanations for plaintiff's apparent weight loss, but defendants offer *no* explanation for the weight loss plaintiff's medical records depict.

[13] According to plaintiff, he "was not able to eat the foods served on the regular diet", thus he "would at times keep a fruit or some milk from breakfast so that he could eat later, to starve off his hunger". Plaintiff's Affidavit [246], ¶14.

difficult to reconcile with plaintiff's significant and rapid weight loss, which would have been manifest. Defendants' conspicuous failure to even acknowledge - much less address - this weight loss establishes a genuine issue of material fact exists as to whether they were deliberately indifferent to a potentially serious medical need.

## 2. DSA Moffit, Superintendent Moscicki, Nurse Administrator Steeg, Grievance Director Bellamy and Chief Medical Officer Wright

Prior to Ashcroft v. Iqbal, 556 U.S. 662 (2009), it had been well settled that "[t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). However, in Iqbal, the Supreme Court clouded this issue when it rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution", concluding that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 556 U.S. at 677.

Since Iqbal, some districts courts have determined that not all five of Colon's categories of conduct that may give rise to supervisory liability remain viable. *See e.g.*, Spear v. Hugles, 2009 WL 2176725, *2 (S.D.N.Y. 2009) ("only the first and third *Colon* factors have

-14-

survived the Supreme Court's decision in *Iqbal*" ); Bellamy v. Mount Vernon Hospital, 2009 WL 1835939, *6 (S.D.N.Y. 2009), aff'd, 387 Fed. Appx. 55 (2d Cir. 2010) (Summary Order) ("The Supreme Court's decision in *Iqbal v. Ashcroft* abrogates several of the categories of supervisory liability enumerated in *Colon v. Coughlin*.  Iqbal's active conduct standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation. Only the first and part of the third *Colon* categories pass *Iqbal's* muster")[14]; Bryant v. County of Monroe, 2010 WL 4877799, *3 (W.D.N.Y.2010) (Siragusa, J.) ("The Court . . . is persuaded by the analysis of . . . *Iqbal* . . . in *Bellamy*").[15]  However, I agree "with the apparent majority view that where, as here, the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth, Eighth or Fourteenth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply."  Shepherd v. Powers,  2012 WL 4477241, *10 (S.D.N.Y. 2012).

### a.    DSA Moffit

Notwithstanding  DSA Moffit's argument that it was "not in the realm of  [his] authority . . . to dictate treatment plans" (defendants' Memorandum of Law [239-1], p. 15), defendants concede that  DSA Moffit "supervised the medical department" and that he

---

[14]    "[T]he *Iqbal* issue was not raised on appeal" in Bellamy.  Stresing v. Agostinoni, 2012 WL 2405240, *4  (W.D.N.Y. 2012) (Skretny, J).

[15]    Adding to the uncertainty, "[t]he Second Circuit has not yet addressed which, if any, of the *Colon* categories survive *Iqbal*."  Jamison v. Fischer,  2012 WL 4767173, *4  (S.D.N.Y. 2012).

"responded to plaintiff's written complaints after . . . investigating the matters raised by plaintiff". Id. The Second Circuit has held that "[w]hen allegations of improperly denied medical treatment come to the attention of a supervisor of a medical program, his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility". McKenna v. Wright, 386 F.3d 432, 438 (2d Cir. 2004). DSA Moffit's conduct extended beyond merely adjudicating a grievance - he also received complaints from plaintiff, and responded in detail to his complaint that he was "being ignored". Moffit Declaration [239-7], Ex. A, Bates No. 00998. When coupled with his role as the supervisor of the medical department, these facts raise a triable issue as to his personal involvement. Therefore, I recommend that his motion for dismissal be denied.

### b.        Superintendent Moscicki

Superintendent Moscicki argues that he is not a physician or medically trained, and that he relied on the opinion of the medical professionals who examined plaintiff. Moscicki Declaration [239-8], ¶22. Defendants further argue that Superintendent Moscicki lacks personal involvement in any alleged deliberate indifference since his "participation in plaintiff's issues was solely to uphold the denial of the plaintiff's grievances by the [IGRC]". Defendants' Memorandum of Law [239-1], p. 16. I agree. "The fact that [the] Superintendent . . . affirmed the denial of plaintiff's grievance - which is all that is alleged against him - is insufficient to establish personal involvement". Joyner v. Greiner, 195 F.Supp.2d 500, 506 (S.D.N.Y. 2002); Ramos v. Wright, 2011 WL 2462482, *6 (N.D.N.Y. 2011), adopted 2011 WL 2462472 (N.D.N.Y. 2011) (dismissing claims against superintendent on personal involvement grounds

where "[p]aintiff's sole factual allegation against Defendant Superintendent Smith, [was] that he affirmed the resolution of Plaintiff's institutional grievance and indicated that Plaintiff was receiving adequate medical attention"); Henry v. Lempke, 680 F.Supp.2d 461, 464 (W.D.N.Y. 2010) (Larimer, J.) ("To the extent that [Superintendent] Lempke may have, in the course of his official duties, denied or affirmed the denial of certain grievances filed by the plaintiff, 'the denial of [a] plaintiff's grievance - [where that] is all that is alleged against him - is insufficient to establish personal involvement [in a constitutional violation]' by a prison superintendent"); Ramsey v. Goord, 2005 WL 2000144, *8 (W.D.N.Y. 2005) (Skretny, J.) ("the fact that a prison official in the prison chain of command affirms the denial of an inmate's grievance is not enough to establish the requisite personal involvement of that official"); Vogelfang v. Capra, 2012 WL 832440, *7 (S.D.N.Y. 2012) ("an officer tasked only with reviewing an administrative determination is not 'personally involved' even if the underlying determination implicates a plaintiff's constitutional rights"); White v. Sears, 2011 WL 2728443, *8 (N.D.N.Y. 2011), adopted 2011 WL 2728431 (N.D.N.Y. 2011) ("To the extent that Superintendent Sears is named as a defendant because he denied Plaintiff's grievance, the denial of Plaintiff's grievance is insufficient to establish personal involvement").[16]

While he is uncertain whether it was ever sent, Superintendent Moscicki also acknowledges the existence of an unsigned memorandum dated August 10, 2007 from him

---

[16]     *Compare with* McKenna, 386 F.3d at 437-38 ("Although it is questionable whether an adjudicator's rejection of an administrative grievance would make [the defendant deputy superintendent for administration] liable for the conduct complained of", where the defendant was responsible for the prison's medical program and "allegations of improperly denied medical treatment come to [his] attention . . ., his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility").

responding to an August 6, 2007 letter from plaintiff's brother, Anderson Bernier.  Moscicki

Declaration [239-8], ¶8, Ex. A.  In this correspondence, Superintendent Moscicki stated that he

could not provide Bernier with any information about his brother's health care "because of

privacy laws",  but "assure[d] [him] that [plaintiff] is being appropriately administered to".  Id.,

Ex. A.

   "The law is clear . . .  that a prison official's mere response to a grievance, by

itself, is not sufficient to establish personal involvement for purposes of §1983."  Hidalgo v.

Kikendall, 2009 WL 2176334, *4  (S.D.N.Y. 2009).  Nevertheless,  "[a] supervisor's detailed,

specific response to a plaintiff's complaint" may suffice to establish personal involvement.

Mateo v. Fischer, 682 F.Supp.2d 423, 430-31 (S.D.N.Y. 2010); see Rosario v. Fischer, 2012 WL

4044901, *5 (S.D.N.Y. 2012), adopted 2012 WL 6681695 (S.D.N.Y. 2012) ("a *pro forma*

response to a letter or grievance" does not amount to personal involvement); Brooks v. Chappius,

450 F.Supp.2d 220, 226 (W.D.N.Y. 2006) (Larimer, J.) ("in general personal involvement will

not be found unless 'the supervisor's response is detailed and specific'").[17]

   Even giving plaintiff the benefit of every favorable inference, I conclude that

Superintendent Moscicki's assurance to plaintiff's brother that plaintiff was being properly

treated, without any explanation of the treatment he was receiving or the complaints at issue, is

insufficient to  establish Superintendent Moscicki's personal involvement.  Therefore, I

recommend that the claims against him be dismissed.

---

[17] *Compare with* Ramos v. Artuz, 2001 WL 840131, *10 (S.D.N.Y. 2001)(finding personal involvement where the defendant "defended and explained Green Haven's treatment of plaintiff, both to plaintiff and to Legal Aid Society").

### c.     Nurse Administrator Steeg

Defendants likewise argue that Nurse Administrator Steeg did not have sufficient personal involvement, since his "only involvement with plaintiff's medical care was to respond to correspondence from plaintiff.  The issues addressed in plaintiff's correspondence were addressed by Steeg, and nothing in plaintiff's correspondence indicated the existence of a constitutional violation".  Defendants' Memorandum of Law [239-1], p. 17.

Nurse Administrator Steeg received a complaint  from plaintiff dated August 7, 2007, complaining that his Vistaril and special diet had been discontinued and that these "medical regimens helped control [his] allergic reaction of . . . rejection of certain foods". Plaintiff's Opposition to Defendants' Statement of Uncontested Material Facts [246], Ex. H.  He responded to plaintiff's complaint by stating that "[a]ll questions directly relating to medical therapy and medication should be directed to the facility Medical Director here".  Id.

As discussed above, a generalized response such as this to a complaint is not sufficient to establish personal involvement.  *See* Mateo, 682 F.Supp.2d at 430-31.  "Nor is it enough that a supervisor forwarded a complaint or grievance to another official for handling." Id. at 430. Therefore, I recommend  that defendant Nurse Administrator Steeg be dismissed for lack of personal involvement.

### d.     Chief Medical Officer Wright

Without making any specific arguments, defendants appear to move for summary judgment as against defendant Dr. Wright for lack of personal involvement in the alleged deliberate indifference to plaintiff's medical needs that occurred at Lakeview.  Defendants'

Memorandum of Law [239-1], p. 19. In response, plaintiff relies on his August 2, 2007 letter to Dr. Wright complaining that he "can not eat" (plaintiff's Affidavit [246], Ex. B-4, and a letter dated August 28, 2007 from Dr. Wright to Mr. Bernier, stating that "an investigation regarding [his] concern with the health care services being provided" and to "be assured that [plaintiff] is receiving necessary health care and services" Id., Ex. B-9.[18]

As discussed above, such a generalized response is insufficient to establish Dr. Wright's personal involvement. Therefore, I recommend that the claims against him be dismissed.

### e.    Karen Bellamy, Grievance Director[19]

Defendants argue that Grievance Director Bellamy's involvement was limited to "uphold[ing] the denial of the plaintiff's grievances", but that he did not review them. Defendants' Memorandum of Law [239-1], p. 17. Plaintiff does not respond to this argument. Therefore, I recommend that Grievance Director Bellamy be dismissed for lack of personal involvement.

### D.    Medical Treatment at Clinton

---

[18]    Dr. Wright also advised Mr. Bernier that he was unable to divulge any specific health information without a release from plaintiff. Plaintiff's Affidavit [246], Ex. B-9. However, "defendant Wright's actions in telling Plaintiff's family members that Plaintiff would need to sign medical release forms is not enough to subject Defendant Wright to personal liability." Anderson, 2011 WL 1315721 at *8.

[19]    Although Bellamy appears to be named only in plaintiff's Fourth Cause of Action arising from his care at Clinton, defendants have addressed her role with respect to plaintiff's treatment at Lakeview. Defendants' Memorandum of Law [239-1], p. 12.

Plaintiff's Fourth Cause of Action relates to plaintiff's medical treatment at Clinton. Fourth Amended Complaint [212], ¶45. Plaintiff alleges that defendants refused to have him seen by a hepatologist, to provide him with showers and lotion for pruritus, and to provide him with Ensure for his gastric and nutritional maladies. Id. I will address each of the allegations individually:

### 1.     Alleged Failure to be Treated by a Hepatologist

Defendants argue that plaintiff's claim arising from their failure to refer him to a hepatologist should be dismissed due to his failure to exhaust administrative remedies. Defendants' Memorandum of Law [239-1], pp. 18-19, 21-22. *See* Gregory Declaration [239-11], ¶¶9, 10. In response, plaintiff does not dispute that he failed to exhaust his administrative remedies with respect to defendants' alleged failure to refer him to a hepatologist. Instead, he argues, "[t]he semantics of the term hepatologist is beside the point. The Plaintiff has been seen by a gastroenterologist who specializes in liver issues and he has recommended treatment with the new triple drug therapy. Defendant Koenigsmann has yet to inform the Plaintiff of what [DOCCS] will do as to that recommendation. This treatment is the community standard". Plaintiff's Memorandum of Law [246], p. 10.

Even assuming that plaintiff exhausted his claim concerning a referral to a hepatologist, "there is no recognized Board Certification for hepatology in New York, and the treatment of liver disease falls under the area of gastroenterology". Lee Declaration [86] ¶17. Moreover, plaintiff has been seen by a gastroenterologist, and Dr. Lee will request a referral in the future, if appropriate. Id., ¶18. Thus, I conclude that plaintiff has received what his

complaint seeks.  Fourth Amended Complaint [212], p. 16, "Wherefore" Clause, ¶4 (seeking an injunction directing "that the Plaintiff be seen by a hepatologist").

In opposition to defendants' motion for summary judgment, plaintiff argues that defendants have failed to act on the  gastroenterologist's  recommendation that he be treated with a new triple drug therapy.  Plaintiff's Memorandum of Law [246], pp. 10-11.  However, this allegation was not raised in plaintiff's Fourth Amended Complaint.[20]  "It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment." Brandon v. City of New York, 705 F.Supp.2d 261, 278 (S.D.N.Y. 2010).  Therefore, I will not consider these allegations.  *See* Lyman v. CSX Transportation, Inc., 364 Fed.Appx. 699, 702 (2d Cir. 2010) (Summary Order) ("we cannot conclude that the district court abused its discretion in failing to consider plaintiff's new theories of liability"); Fullwood v. Association for the Help of Retarded Children, Inc., 2010 WL 3910429, *7 (S.D.N.Y. 2010).

Even if plaintiff had asserted a claim of deliberate indifference arising from defendants' failure to treat him with a triple drug therapy, "[t]he Eighth Amendment does not entitle plaintiff to the treatment of his choice".  Berry v. Wright,  2011 WL 231626, *6 (W.D.N.Y. 2011) (Schroeder, M.J.).

2.      **Alleged Failure to Provide Plaintiff with Showers and Lotion for His Pruritus**

As discussed above, plaintiff's complaints of  itching arising from his Hepatis infection do not constitute an objectively serious condition.  *See* Benitez, 2009 WL 3486379 at

_____

[20]      The Fourth Amended Complaint [212] merely alleges that "plaintiff has learned that Dependent on the stage of the Plaintiff's liver disease, there are interventions to help ameliorate the Plaintiff's condition" (id., ¶36).

*11.  Even if plaintiff's pruritus constituted a serious medical condition, the record demonstrates that defendants were not deliberately indifferent to this condition.  He received Vistaril for his complaints of itching (defendants' Statement of Undisputed Facts [239-2], ¶¶176, 184-185; Johnson Declaration [192-1], ¶¶22-23) and was prescribed lotion for his skin when it was medically indicated.  Defendants' Statement of Undisputed Facts [239-2], ¶187; Johnson Declaration [192-1], ¶15.  Plaintiff also fails to dispute that even if his requests for lotion were denied, that he was able to purchase lotion through the commissary.  Johnson Declaration [192-1], ¶16.

Additionally, plaintiff  alleges that he was deprived of a shower pass to ameliorate his pruritus (Fourth Amended Complaint [212], ¶39).  In response, Dr. Johnson states that "increase . . . showering actually increases skin dryness, and is not medically indicated for dry skin".  Johnson Declaration [192-1], 11.  This amounts to a disagreement as to the proper treatment for plaintiff's pruritus.  However, "disagreements over treatment do not rise to the level of a Constitutional violation", Graham v. Gibson, 2007 WL 3541613, *5 (W.D.N.Y.2007) (Siragusa, J.), as "the Constitution does not require that an inmate receive a particular course of treatment".  Tafari, 2009 WL 331378, at *7.  Therefore, I recommend that these claims be dismissed.


3.        **Alleged Failure to Provide Plaintiff with Ensure**

Plaintiff alleges that he was prescribed Ensure "in December, 2009, per the direction of the gastric specialist", but that it was discontinued without notification.  Fourth Amended Complaint [212], ¶40.  According to plaintiff, "[d]ue to [his] gastrointestinal issues

and the recurrent nausea which creates an [i]nability to eat properly, at times . . . the Ensure

would assist [him] with the proper absorption of nutrients and help relive [*sic*] the fatigue that

[he] experiences, consequent of the Hep C". Fourth Amended Complaint [212], ¶40. Defendants

explain that plaintiff was taken off of Ensure in October 2010 "because his body mass index

revealed that it was no longer medically indicated from [*sic*] him" and that this was explained to

him. Johnson Declaration [192-1], ¶25.

It is undisputed that at the time plaintiff was prescribed Ensure he weighed

between 200 and 210 lbs. (Zimmerman Declaration [239-3], Ex. B, p. 42), and that when his

Ensure was discontinued, he weighed 228 lbs. Johnson Declaration [192-1], Ex. A, Bates No.

02582. It is also undisputed that he continued to gain weight after his Ensure was discontinued,

weighing 240 lbs on March 31, 2011. Johnson Declaration [192-1], ¶26, Ex. A, Bates No. 02586.

His blood tests also showed no nutritional deficit. Id., ¶27.

The record demonstrates that defendants did not ignore plaintiff's inability to eat

and the necessity for nutritional supplementation. While plaintiff may disagree with the decision

to discontinue his Ensure, this again amounts to a disagreement between the parties as to the type

of treatment plaintiff's condition required, which is insufficient to establish deliberate

indifference. See Graham, 2007 WL 3541613 at *5.


**E.     DOCCS' Policy of Discontinuing Medications**

Plaintiff's Third Cause of Action alleges that DOCCS has a policy of

discontinuing medications upon an inmate's transfer into a new facility, in deliberate

indifference to a prisoner's serious medical needs. Fourth Amended Complaint [212], ¶44.

DOCCS concedes that it has a policy of reviewing all treatments and medications when care of a new patient is commenced, but alleges that this "is the same as that for the community at large". Defendants' Memorandum of Law [239-1], p. 20. In fact, it argues that "[t]he policy which the plaintiff desires, which is for new medical providers to simply rubber stamp the decisions of prior providers . . . . would amount to deliberate indifference". Id.

Aside from challenging the discontinuance of his Vistaril prescription and therapeutic diet at Lakeview, plaintiff does not appear to specifically respond to these arguments or to address this cause of action in his opposition to defendants' motion for summary judgment.

In any event, DOCCS' policy of having an inmate's medications reevaluated at each new facility they are transferred does not establish deliberate indifference, even if such policy permits facilities to reach different conclusions concerning what medications should be prescribed or treatment should be administered. *See* Porter v. Jin, 2010 WL 3767876, *2 (W.D.N.Y. 2010)(Arcara, J.) ("The fact that plaintiff may have received surgery after being examined by another physician at a different correctional facility does not transform what otherwise may be a medical malpractice claim to a claim of deliberate indifference in violation of the Eighth Amendment"). Therefore, I recommend that this claim be dismissed.

**CONCLUSION**

For these reasons, I recommend that plaintiff's first cause of action be dismissed to the extent it arises from plaintiff's pruritus; that his second cause of action be dismissed against defendants Moscicki, Steeg, Wright, Bellamy; and that his third and fourth causes of action be dismissed in their entirety, but that defendants' motion otherwise be denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by April 12, 2013 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(c), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: March 26, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge